**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

JAMAR DONALDSON,                          :
                                          :     Civil Action No. 04-3036 (DMC)
                    Petitioner,           :
                                          :
            v.                            :     **OPINION**
                                          :
ROY L. HENDRICKS, et al.,                 :
                                          :
                    Respondents.          :


**APPEARANCES:**

Petitioner pro se                    Counsel for Respondents
Jamar Donaldson                      Paula T. Dow
New Jersey State Prison              Essex County Prosecutor
3rd and Federal Streets              Essex County Courts Building
Trenton, NJ 08625                    Newark, NJ 07102


**CAVANAUGH**, District Judge

     Petitioner Jamar Donaldson, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Roy L. Hendricks and the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, on direct appeal.[1]

> We need not recount all of the evidence.  Suffice it to say that the convictions arose from what the jury could have concluded was a drug related shooting of Michael Young in October 1994 on Central Avenue in Newark.  While the jury may also have thought that the gunshot wounds, a shot in the arm and a "cap in the butt," were not necessarily intended to kill, at the least serious bodily injury was intended.  Two impartial eyewitnesses and a not so impartial cooperating participant of the shooting established that the victim was shot at least twice with a Tech-9 handgun as he was leaving the area after a physical confrontation.  At trial, defendant admitted being at the scene and hearing gunshots, but he denied shooting the victim, or even seeing the incident occur.  In a formal police statement given shortly after the incident, however, defendant said he "shot him twice I think I hit him once" with a gun that he had bought from a "coke [fiend]."

> To be sure, the impartial eyewitnesses did not identify the shooter.  And the State's less than impartial witness, who had named defendant as the culprit immediately after the shooting and during the trial and who had fetched the gun to the scene, was certainly not without credibility problems.  Nevertheless, the jury's finding of defendant's guilt beyond a reasonable doubt has firm support in the State's evidence which the jury obviously accepted as credible.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

(Ra1 at DA67-68.)  The Appellate Division also acknowledged the

factual premise for some of Petitioner's claims that the cause of

death was not the shooting but instead was complications arising

from ensuing medical treatment.

> Concededly, the victim might have recovered had
> all the perforations of his bowel caused by the gunshot
> wound in his back been detected and repaired by the
> emergency room physicians and properly treated.  But
> they did not and he developed peritonitis, which did
> not respond to treatment.

(Ra1 at DA69.)

Following a jury trial in the Superior Court of New Jersey,

Law Division, Essex County, Petitioner was convicted of first

degree purposeful or knowing murder, N.J.S.A. 2C:11-3a(1)and (2),

third degree possession of a handgun without a permit, N.J.S.A.

2C:39-5b, and second degree possession of a handgun with the

intent to use it against another person, N.J.S.A. 2C:39-4a.  The

court imposed an aggregate sentence of life imprisonment with a

thirty-year parole disqualifier.

On direct appeal, the Superior Court of New Jersey affirmed

the conviction.  (Ra1 at DA66.)  By Order entered May 12, 1999,

the Supreme Court of New Jersey denied certification.  (Ra1 at

DA73.)

Petitioner timely moved in state court for post-conviction

relief.  Following a non-evidentiary hearing, the trial court

denied relief.  (Transcript of Motion for Post-Conviction Relief,

dated May 25, 2001; Ra1 at DA114.)  On December 4, 2003, the

3

Appellate Division affirmed the denial of relief.  (Ra4.)  By

Order entered March 2, 2004, the Supreme Court of New Jersey

denied certification.  (Ra7.)  This Petition timely followed.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.

> With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the

adjudication of the claim

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a

federal court may exercise pre-AEDPA independent judgment.  See

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),

cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell,

290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and

cases discussed therein).

     The deference required by § 2254(d) applies without regard

to whether the state court cites to Supreme Court or other

federal caselaw, "as long as the reasoning of the state court

does not contradict relevant Supreme Court precedent."  Priester

v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19

(2002)).

     Although a petition for writ of habeas corpus may not be

granted if the Petitioner has failed to exhaust his remedies in

state court, a petition may be denied on the merits

notwithstanding the petitioner's failure to exhaust his state

court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.

Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.

Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

     Finally, a pro se pleading is held to less stringent

standards than more formal pleadings drafted by lawyers.  Estelle

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

519, 520 (1972).  A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of

tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);

Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),

cert. denied, 399 U.S. 912 (1970).]

### III.   ANALYSIS

A.   Defective Grand Jury Proceedings

Petitioner contends that the prosecutor deprived him of his

due process rights by failing to present clearly exculpatory

evidence to the grand jury.  Petitioner contends that the

prosecutor should have presented evidence that the victim died

from peritonitis 33 hours after being shot and that the death was

caused by medical malpractice.  On direct appeal, the Appellate

Division denied this claim summarily.  (Ra1 at DA69.)[2]

The Fifth Amendment right to a grand jury presentation in

felony cases is not applicable to the states.  Alexander v.

Louisiana, 405 U.S. 625, 633 (1972).  Thus, any claim of defect

in a state grand jury proceeding is a claim of a state-law error

that does not raise federal constitutional concerns unless it

rises to the level of a due process deprivation.  See Estelle v.

McGuire, 502 U.S. 62, 68 (1991).  Cf. U.S. v. Console, 13 F.3d

---

[2] Petitioner raised this claim again in his motion for post-conviction relief.  The Appellate Division noted that this claim was barred by N.J.Ct.R. 3:22-5 (barring claims that have previously been adjudicated on direct appeal).  (Ra4 at 7.)

641, 671-72 (3d Cir. 1993) (with the exception of a claim of

racial discrimination in the selection of grand jurors, a petit

jury's guilty verdict renders harmless any prosecutorial

misconduct before the indicting grand jury) (citing <u>Vasquez v.

Hillery</u>, 474 U.S. 254 (1986)).   Where any error in a state grand

jury proceeding is rendered harmless by a subsequent petit jury

verdict, there is no due process deprivation.   <u>See</u>, <u>e.g.</u>, <u>Lopez

v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989); <u>United States v.

Mechanik</u>, 475 U.S. 66, 72-73 (1986) (involving a violation of

Fed.R.Crim.P. 6(d)).

Here, after hearing the testimony Petitioner contends should

have been presented to the grand jury, the petit jury found

Petitioner guilty of the crimes charged beyond a reasonable

doubt, rendering harmless any error in the state grand jury

proceedings.   Petitioner is not entitled to relief on this claim.

B.    <u>Admission of Threat Testimony</u>

Petitioner contends that he was deprived of his due process

rights by the admission of a witness's testimony about a threat

that came from somebody other than Petitioner and by the

prosecutor's use of that testimony to bolster the witness's

credibility.   The Appellate Division rejected this claim on

direct appeal.

> [W]e comment only that were we the trial judges we
> might not have admitted the evidence of threats to the
> State's witness, Jason Horn, that he claimed to have
> received prior to the second of his two police

statements.  We are less than convinced by the
professed relevancy of such threats, that is to bolster
the credibility of the witness under N.J.R.E. 607.  See
United States v. Vaulin, 132 F.3d 898, 901 (3rd Cir.
1997).  Moreover, the potential prejudice to defendant
in being identified with such threats, even though the
evidence was that they did not come from him, is fairly
significant.  Id. at 900 ("[i]t ... should go without
saying ... that when a cooperating witness is asked
about death threats that he or she has received ... a
reasonable juror might readily assume that the
defendant is behind such threats.  Common sense would
cause a juror to wonder why else the prosecutor would
ask such a question.").  And, while extrinsic threats
to a witness may be admissible to explain testimony
that is inconsistent with earlier statements, State v.
Gray, 112 N.J. Super. 412, 417-18 (App. Div. 1970),
certif. denied, 57 N.J. 596 (1971), that is not the
case here.  As far as we can tell, while there was an
inconsistency between Horn's police statements and
trial testimony relating to the actions of another of
the participants, Jaheed, there were no inconsistencies
between the two police statements.

But in the end, we suppose the matter really is
one of clear abuse of trial discretion in the
application of N.J.R.E. 403.  State v. Marrero, 148
N.J. 469, 483-84 (1997).  In light of the trial judge's
"[advice] ... and emphasi[s] [to the jury] ... that
there is not only no evidence of any threats coming
from the defendant but there is no way that you may
infer in any way that there were made on behalf of or
directed in any way, shape or fashion by the
defendant," we cannot find a clear abuse of discretion.

(Ra1 at DA69-72.)

It is well-established that the violation of a right created

by state law is not cognizable as a basis for federal habeas

relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have

stated many times that 'federal habeas corpus relief does not lie

for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S.

764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief

9

for any errors in state law evidentiary rulings, unless they rise
to the level of a deprivation of due process.  Estelle, 502 U.S.
at 70 ("'the Due Process Clause guarantees fundamental elements
of fairness in a criminal trial'") (quoting Spencer v. Texas, 385
U.S. 554, 563-64 (1967)

     For a habeas petitioner to prevail on a claim that an
evidentiary error amounted to a deprivation of due process, he
must show that the error was so pervasive as to have denied him a
fundamentally fair trial.  Keller v. Larkins, 251 F.3d 408, 413
(3d Cir.), cert. denied, 534 U.S. 973 (2001).  "A claim under the
'fundamental fairness' standard may arise when "the probative
value of ... evidence, though relevant, is greatly outweighed by
the prejudice to the accused from its admission."  Kunko v.
Attorney Gen., 85 Fed.Appx. 819, 820 (3d Cir. 2003) (unpublished)
(quoting Bisaccia v. Attorney Gen., 623 F.2d 307, 313 (3d Cir.
1980)).

     Here, the Appellate Division found the admission of the
threat evidence permissible under state law and found no abuse of
discretion in light of the trial court's strong and immediate
limiting instruction.  (4T88-90.)  In a case analyzing whether
admission of similar evidence of unrelated threats so violated
Federal Rules of Evidence 401 and 403 as to require a new trial,
the Court of Appeals for the Third Circuit found that any
prejudice that resulted from the testimony was eliminated by the

trial court's immediate curative instruction.  See United States

v. Vaulin, 132 F.3d 898 (3d Cir. 1997).  The decision of the

Appellate Division is neither contrary to nor an unreasonable

application of federal law.  Petitioner is not entitled to relief

on this claim.

Petitioner also argues that the prosecutor's references to

this evidence deprived him of his due process rights.

The U.S. Supreme Court has recognized the obligation of a

prosecutor to conduct a criminal prosecution with propriety and

fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ...  Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line

separating acceptable from improper advocacy is not easily drawn;

there is often a gray zone.  Prosecutors sometime breach their

duty to refrain from overzealous conduct by commenting on the

defendant's guilt and offering unsolicited personal views on the

evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,

> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, in the defense opening, counsel for Petitioner argued that Jason Horn was the shooter.  (4T15-19.)  In direct examination, pursuant to a ruling of the trial court, the prosecutor elicited testimony that the witness Jason Horn

continued to cooperate with investigators after receiving threats.  It was made clear both by the witness and by the court that the threats did not come from Petitioner.  The trial court gave an immediate limiting instruction.  In the defense summation, counsel stated "Jason lies on the stand to protect Jaheed as well as himself," and made further attacks on Jason Horn's credibility.  (7T16-20.)  In response, the prosecutor emphasized that Horn continued to cooperate in the face of threats.  (7T42-43.)  Except to give a general instruction regarding the credibility of witnesses, the court did not return to the issue of the threats in its general charge to the jury. (8T.)

The trial court limited the jury's consideration of the threat testimony, and the prosecutor's comments on the witness's continuing cooperation was a reasonable response to defense counsel's attacks on the witness's credibility.  Petitioner is not entitled to relief on this claim.

C.    Jury Instruction

Petitioner asserts that the jury instruction on causation was flawed because it did not reflect that causation was at issue based on possible medical malpractice.  The Appellate Division rejected this claim on direct appeal.

> Concededly, the victim might have recovered had
> all the perforations of his bowel caused by the gunshot
> wound in his back been detected and repaired by the
> emergency room physicians and properly treated.  But

they did not and he developed peritonitis, which did
not respond to treatment.  In charging causation in the
context of purposeful or knowing murder, the trial
judge simply said "[w]hether the killing is committed
purposely or knowingly causing death or serious bodily
injury resulting in death must be within the design or
contemplation of the defendant."  He was not requested
to and did not include the additional [State v. Martin,
119 N.J. 2 (1990)] causation charge.  Where causation
is truly at issue, that charge requires the jury to
consider whether "the actual result [of the defendant's
conduct] ... [was] too remote, accidental in its
occurrence, or dependent on another's volitional act to
have a just bearing on the actor's liability or on the
gravity of his offense."  N.J.S.A. 2C:2-3b; State v.
Martin, supra, 119 N.J. at 16-17.

        Despite defendant's present contention that this
charge should have been given, we are satisfied that
the standard causation charge was appropriate.
According to the State's evidence, obviously accepted
by the jury, the shooter of the victim plainly intended
to cause, at the least, serious bodily injury.  The
victim was directly shot with a Tech-9 handgun at least
twice.  These were not errant or mere glancing misfires
which just happened to hit him.  See State v. Martin,
supra, 119 N.J. at 13 ("one who acts with the purpose
or knowledge to inflict only serious bodily injury may,
if the injury results in the victim's death, be found
guilty of non-capital murder."  (citing State v.
Gerald, 113 N.J. 40, 82 (1988))).  This is quite unlike
the arson defense in Martin where defendant had
contended that though he did set a paper bag on fire,
he did not intend or know that it would cause the
apartment building to catch on fire, ultimately
resulting in the death of an occupant who was unable to
escape.

        Indeed, causation was not defendant's defense at
trial.  Counsel conceded that "a bullet wound from that
gun is the one that killed him."  The critical issue
was whether defendant was the shooter.  Thus, counsel
argued in summation:

        In this case they have a lot of proof, a lot
        of proof that Michael Young was shot.  They
        have photographs of blood.  They have
        photographs of shell casings.  They have the

14

actual shell casing.  They have proof that he
was killed.  All of which is not be [sic]
contested by anyone.  Everybody realizes he
was shot and he ultimately died.  <u>What you
have to consider and what really this is all
about is what is the proof in this case that
young [defendant] is the one who committed
the act.</u>

[Emphasis added by Appellate Division.]

Simply stated, the <u>Martin</u> causation was not an
issue in the case.  That is to say, regardless of the
failure of the emergency team to initially identify and
treat all of the bowel punctures leading to the
peritonitis, it can hardly be said that a complication
of peritonitis from a gunshot which invades a victim's
bowels is "too remote, accidental in its occurrence, or
[too] dependent on another's volitional act to have a
just bearing" on a defendant's culpability.  <u>Compare</u>
<u>State v. Martin</u>, <u>supra</u>, 119 N.J. at 16-17, <u>with</u> <u>State</u>
<u>v. Mujahid</u>, 252 N.J. Super. 100, 112-13 (App. Div.
1991), <u>certif. denied</u>, 127 N.J. 561 (1992), and <u>State</u>
<u>v. Green</u>, ___ N.J. Super. ___, ___ (App. Div. 1999)
(slip op. at 11-14).

(Ra1 at DA69-71.)

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

[t]he only question for us is "whether the ailing
instruction by itself so infected the entire trial that
the resulting conviction violates due process."  It is
well established that the instruction "may not be
judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record.  In addition, in reviewing an ambiguous
instruction ..., we inquire "whether there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way" that violates the
Constitution.  And we also bear in mind our previous
admonition that we "have defined the category of

15

> infractions that violate 'fundamental fairness' very
> narrowly."   "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).   Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."   Smith v. Horn, 120 F.3d 400, 416 (1997).   See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it is

subject to "harmless error" analysis.   Smith v. Horn, 120 F.3d at

416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).   "[I]f

the [federal habeas] court concludes from the record that the

error had a 'substantial and injurious effect or influence' on

the verdict, or if it is in 'grave doubt' whether that is so, the

error cannot be deemed harmless."   Id. at 418 (citing California

v. Roy, 519 U.S. 2, 5 (1996)).   In evaluating a challenged

instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

Here, the Appellate Division found that the challenged instruction complied with state law.  The instruction did not "operate[] to lift the burden of proof on an essential element of an offense."  Accordingly, Petitioner is not entitled to relief on this claim.

D.   Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel provided ineffective assistance by failing to move to dismiss the indictment, raising again the issue that the grand jury should have heard evidence of potential medical malpractice.  On the motion for post-conviction relief, the trial court denied this claim, ruling that any such motion would have been denied because "causation" was not at issue in Petitioner's defense.  Instead, Petitioner's defense was that he was not the shooter.  (Post-Conviction Transcript at 9-10.)

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

The right to counsel is "the right to <u>effective</u> assistance of

counsel."   <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)

(emphasis added).

   To prevail on a claim of ineffective assistance of counsel,

a habeas petitioner must show both that his counsel's performance

fell below an objective standard of reasonable professional

assistance and that there is a reasonable probability that, but

for counsel's unprofessional errors, the outcome would have been

different.   <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694

(1984).   A "reasonable probability" is "a probability sufficient

to undermine confidence in the outcome."   <u>Strickland</u> at 694.

Counsel's errors must have been "so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."

<u>Id.</u> at 687.   "When a defendant challenges a conviction, the

question is whether there is a reasonable probability that,

absent the errors, the factfinder would have had a reasonable

doubt respecting guilt."   <u>Id.</u> at 695.

   The performance and prejudice prongs of <u>Strickland</u> may be

addressed in either order, and "[i]f it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient

prejudice ... that course should be followed."   <u>Id.</u> at 697.

   There is "a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."

<u>Strickland</u>, 466 U.S. at 689.   As a general matter, strategic

18

choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, the PCR court found that any motion to dismiss the indictment, based upon the failure to present evidence of medical malpractice, would have been denied.  Thus, Petitioner cannot establish prejudice based upon the failure to make the motion. The decision of the PCR court that counsel was not ineffective is neither contrary to nor an unreasonable application of federal law.  Petitioner is not entitled to relief on this claim.

### IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree
with the district court's resolution of his constitutional claims
or that jurists could conclude the issues presented are adequate
to deserve encouragement to proceed further."  Miller-El v.
Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of
the denial of a constitutional right.  Accordingly, no
certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.


                                    S/ Dennis M. Cavanaugh
                                    Dennis M. Cavanaugh
                                    United States District Judge

Dated: 6/12/06